UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GOODING** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20 -1133** |
| **LIBERTY MUTUAL INS. CO. ET AL** | **SECTION "L" (3)** |

**ORDER AND REASONS**

Before the Court is a motion for summary judgment filed by Defendant Travelers Indemnity Company, as insurer of Swiftships, Inc. and its alleged executive officers ("Travelers"). R. Doc. 631. Plaintiffs Martha Gooding, Helen Leupold, and Caroline Pendergast oppose the motion. R. Doc. 644. Travelers filed a reply. R. Doc. 699. Considering the briefing, the oral argument of counsel, the record, and the applicable law, the Court now rules as follows.

I.  **BACKGROUND**

This litigation arises from alleged asbestos exposure that occurred while Decedent James Grant Gooding ("Decedent") was employed at various shipyards between 1970 and 1979. R. Doc. 580; R. Doc. 1-1. Decedent allegedly contracted malignant pleural mesothelioma and, ultimately, died as a result of his occupational exposure to asbestos.

Plaintiffs in this survival action are Decedent's surviving heirs, Martha Gooding, Helen Leupold, and Caroline Pendergast (collectively, "Plaintiffs"). They assert wrongful death claims against a number of defendants who allegedly are responsible for exposing Decedent to, or failing to protect Decedent from exposure to, asbestos, and therefore are liable for his contracting and dying of malignant pleural mesothelioma. R. Doc. 580.

From 1970 to 1979, Decedent worked as a field surveyor for American Bureau of Shipping ("ABS"), performing vessel inspections. Decedent was assigned to various shipyards where he determined whether vessels met classification requirements. R. Doc. 1-1 at 10-11.

In January 2020, Decedent was diagnosed with mesothelioma. R. Doc. 580 at 2. Later, he was deposed and testified that, while working for ABS, he was frequently exposed to asbestos, resulting in his mesothelioma. R. Doc. 1-2; R. Doc. 1-3; R. Doc. 1-4; R. Doc. 1-5.

Subsequently, on March 4, 2020, Decedent filed this matter in the Civil District Court for the Parish of Orleans, naming the following four broad categories of defendants: (1) Premises Defendants, which he alleged were strictly liable and/or negligent;[1] R. Doc. 1-1; 1-10; (2) "Asbestos Suppliers" and (3) "Asbestos Manufacturers," which both allegedly breached warranties and are therefore negligent and/or strictly liable; R. Doc. 1-10 at 11-14;[2] and (4) "Insurance Defendant[s]," who allegedly are liable under the Louisiana Direct Action Statute for their insureds' acts and omissions. *Id.* at 18.[3]

---

[1] Namely: (1) Boland Marine & Industrial, LLC; (2) Marine and Manufacturing Company, LLC; (3) Defendant-Cross Defendant Sank Inc.; (4) Bollinger Shipyards Lockport, LLC; (5) Main Iron Works, LLC; (6) Swiftships Inc., to which Teledyne Inc. and Cross Defendant UNC Capital Corporation are predecessors in interests; (6) Delta Machine & Ironworks LLC; (7) Defendant-Cross Defendant American Marine Corporation; (8) Huntington Ingalls Incorporated, and its former executive officer, Albert Bossier; (9) Tidewater Inc.; (10) Trinity Industries Inc.; and (11) American Marine Corporation; (12) International Paper Company).

[2] Namely: (1) Hopeman Brothers Inc.; (2) Eagle Inc.; (3) McCarty Corporation; (4) General Electric Company; (5) Foster Wheeler LLC; (6) Viacom CBS Inc.; (7) Bayer CropScience; and (8) Taylor-Seidenbach, Inc.; (8) General Electric Company; (9) Foster Wheeler LLC; and (10) Bayer CropScience.

[3] Namely: (1) Liberty Mutual Insurance Company, as the alleged insurer of Hopeman Brothers Inc.; (2) Zurich American Insurance Company, as the alleged insurer of Terminated-Defendant Marquette Insulations, Inc.; (3) Travelers Indemnity Company, as the alleged insurer of Swiftships, Inc.; (4) Certain Underwriters at Lloyds, London; (5) Berkshire Hathaway Specialty Insurance Company, as an alleged insurer of Eagle, Inc.; (6) United States Fidelity and Guaranty Company, as another alleged insurer of Eagle, Inc.; (7) Maryland Casualty & Surety Company, as the alleged insurer of Marquette Insulations, Inc.; (8) Aetna Casualty & Surety Company, as an alleged insurer of Trinity Industries, Inc.; (9) Employers Insurance Company of Wausau, as another alleged insurer of Trinity Industries, Inc.; (10) Fidelity and Casualty Insurance Company of New York, as another alleged insurer of Trinity Industries, Inc; and (11) Hartford Accident and Indemnity Company, as another alleged insurer of Trinity Industries, Inc.

On March 22, 2020, Decedent passed away. Plaintiffs, as Decedent's successors, were substituted in his place. They filed this survival action and asserted wrongful death claims. R. Doc. 580 at 2. Certain Defendants removed the matter to this Court on April 7, 2020 pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The matter was originally allotted to Chief Judge Brown, who later recused herself on February 15, 2022, R. Doc. 611.

## II.    PRESENT MOTION

Travelers Indemnity Company ("Travelers"), in its capacity as an alleged insurer of Defendant Swiftships, Inc. ("Swiftships")—a shipyard in Morgan City, Louisiana—and Swiftships's alleged executive officers, moves for summary judgment. R. Doc. 631. Travelers insured Swiftships from December 1, 1970 through December 1, 1974. R. Doc. 631-3 at 1-2.[4] Travelers contends there is no evidence that Decedent ever worked at Swiftships during this four-year coverage period. R. Doc. 631. Moreover, Travelers asserts that, even if the Decedent worked at Swiftships during the policy period, no evidence indicates that Decedent was exposed to asbestos while working at Swiftships during the pertinent period. Thus, according to Travelers, Plaintiffs cannot establish that Decedent's alleged mesothelioma was caused by any work he may have performed at Swiftships. R. Doc. 631-1 at 3. Accordingly, Travelers argues that it is entitled to summary judgment on Plaintiffs claims pursuant to Louisiana's Direct Action Statute. *Id.* at 7.

Plaintiffs oppose Travelers's motion. R. Doc. 644. Plaintiffs contend that Decedent's deposition evidence shows that he worked at Swiftships in the 1970s; that, during this period, he was exposed to significant levels of asbestos at Swiftships; and that expert medical testimony creates a genuine fact issue as to whether this exposure was a substantial contributing factor to

---

[4] Travelers issued two policies during this period. The first was effective from December 1, 1970 to December 1, 1971, while the latter policy ran from December 1, 1971 to December 1, 1974. R. Doc. 631-3 at 2.

3

his contracting mesothelioma. *Id.* at 3-6. Plaintiffs thus argue that summary judgment is inappropriate and that the question of whether Plaintiff's mesothelioma was caused by his work at Swiftships during the time that it was insured by Travelers must be resolved at trial by the finder of fact.

### III.   LEGAL STANDARD

#### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50. In ruling on a summary judgment motion, a court may

not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### B. Analysis

Plaintiffs assert claims against Travelers under Louisiana's Direct Action Statute, La. R.S. § 22:1269. They contend that Travelers is liable for the mesothelioma Decedent allegedly contracted due to asbestos exposure he sustained at Swiftships, a shipyard that Travelers insured from 1970-1974. Under Louisiana law, to prevail in an asbestos case, a plaintiff "must prove . . . that: (1) his exposure to the defendant's asbestos product was significant; and (2) that this exposure caused or was a substantial factor in bringing about his mesothelioma." *Romano v. Metro Life Ins. Co.*, 2016-0954 (La. App. 4 Cir. 5/24/17), 221 So.3d 176, 182; *accord Abadie v. Metro. Life Ins. Co.*, 00-344 (La. App. 5 Cir. 3/28/01), 784 So. 2d 46, 89–90. "Whether the defendant's conduct was a substantial factor is a question for the jury, unless the court determines that reasonable men could not differ." *Borel v. Fibreboard Paper Prod. Corp.*, 493 F.2d 1076, 1094 (5th Cir. 1973). Moreover, under Louisiana law, an insurer is only liable for asbestos-related injuries if the injured party was exposed to the "harmful conditions during the policy period." *Cole v. Celotex Corp.*, 599 So. 2d 1058, 1076 (La. 1992).

The Court will therefore consider whether there are any genuine disputes as to the following two issues of material fact: (1) whether Mr. Gooding was exposed to asbestos at Swiftships during the period Travelers insured shipyard—December 1, 1970 to December

1,1974—and, if so, (2) whether this exposure was a substantial factor in causing Decedent's mesothelioma.

Turning to the first issue, the Court finds that the summary judgment record shows the absence of a genuine dispute as to whether or not Mr. Gooding worked at Swiftships during the coverage period. Of course, if Decedent was not physically present at Swiftships during this time frame, then he necessarily could not have sustained asbestos exposure attributable to that shipyard, and Travelers cannot be liable for Mr. Gooding's death.

Decedent was employed by ABS for over 35 years, from February 1970 until his retirement at some point in 2006. R. Doc. 643-2 at 15.[5] During the 1970s, Mr. Gooding spent 90-95% of his work time inspecting vessels at Avondale Shipyards. *Id.* at 17. However, at his deposition, he did not name the other shipyards at which he inspected vessels in the 1970s during the other 5-10% of his work time. In other words, other than testifying that he worked at Avondale Shipyards, Decedent never specified which particular shipyards he may have worked at during the 1970s. And he certainly did not directly testify that he worked at Swiftships during this period.[6]

It is true that Mr. Gooding testified that he worked at Swiftships while employed by ABS. *E.g.*, *id.* at 96, 129. But he never specified when he was actually present at Swiftships. Rather, Decedent merely explained that, during his 35-year period of employment with ABS, he

---

[5] Although the parties only provided fragments of Mr. Gooding's full deposition transcript, his full testimony has been submitted into the record by other parties, and the Court therefore may rely on this summary judgment evidence.

[6] Plaintiffs, of course, maintain that Decedent did inspect Swiftships during this time. But the portions of Decedent's deposition that they cite in support merely show that he worked at Swiftships at some indeterminate time. *See* R. Doc. 643-2 at 96, 129. Moreover, the Court has independently reviewed the full transcript of Mr. Gooding's depositions and other record evidence and, as discussed *infra*, sees nothing to permit a reasonable inference that Decedent worked at Swiftships during the 1970s or, more pertinently, during the four-year span in that decade that Swiftships was insured by Travelers.

worked at "[p]robably every shipyard in Morgan City . . . There must [have] be[en] a hundred of them." *Id.* at 96. And one of these was Swiftships. *Id.* No range or estimate of the dates he worked at Swiftships is indicated in his deposition or any other summary judgment evidence. Nor does the record evidence include the names of any vessels that Mr. Gooding inspected at Swiftships—evidence that, if it existed, could help establish that Decedent was present at Swiftships during a particular point in time.

Furthermore, Plaintiffs do not point to any evidence as to the frequency with which he visited Swiftships. No log of his worksite history or other documentary evidence has been produced that may shed light on when Decedent was present at Swiftships. Simply put, there is no evidence stating or even suggesting that Mr. Gooding was physically present at Swiftships during the period the shipyard was insured by Travelers.

Applying the proper summary judgment standard, the most that can be said is that the evidence shows that Gooding was present at Swiftships at some undefined time(s) from February 1970 to 2005. Based on these bare facts, it is sheer speculation to conclude that Decedent worked at Swiftships during the pertinent policy periods. And such conjecture is plainly insufficient to defeat summary judgment. *Jones v. United States, 936 F.3d 318, 321* (5th Cir. 2019) (citing *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015)).

Plaintiffs cannot raise a triable issue as to whether Mr. Gooding was present on Swiftships's premises during the time Travelers's insured that shipyard. They thus cannot show that Mr. Gooding was exposed to asbestos as a result of his work at Swiftships during the coverage period. Accordingly, Travelers's motion for summary judgment is due to be granted.[7]

---

[7] The parties also debate whether Plaintiffs have sufficient expert witness evidence to show that Mr. Gooding sustained exposure to asbestos at Swiftships at levels that could have caused his alleged mesothelioma during the time Travelers insured the shipyard. However, as discussed, there is no issue of genuine fact on a predicate issue: whether Decedent was even present at Swiftships during the pertinent period and thus could have

IV.     CONCLUSION

For these reasons,

**IT IS ORDERED** that Defendant Traveler's motion for summary judgment, R. Doc. 631, is **GRANTED** and that Plaintiffs' claims against Travelers are **DISMISSED** with prejudice.

New Orleans, Louisiana, this 3rd day of August, 2022.

_____
**UNITED STATES DISTRICT JUDGE**

---

been exposed to asbestos at the shipyard. Because Plaintiffs have not raised a genuine issue on this question, the Court need not discuss the sufficiency *vel non* of Plaintiffs' expert evidence on asbestos levels and exposure at shipyards, including Swiftships, in the 1970s.