**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **GOODING** | **CIVIL ACTION** |
| **VERSUS** | **NO. 20 -1133** |
| **LIBERTY MUTUAL INS. CO. ET AL** | **SECTION "L" (3)** |

**ORDER AND REASONS**

Before the Court is a motion for summary judgment filed by Defendant and Cross

Defendant SANK, Inc., formerly known as Buck Kreihs Company, Inc. ("Buck Kreihs"). R.

Doc. 651. Plaintiffs Martha Gooding, Helen Leupold, and Caroline Pendergast oppose the

motion. R. Doc. 654. So, too, does Cross Claimant Huntington Ingalls Incorporated

("Avondale"). R. Doc. 673. Considering the parties' briefing, the oral argument of counsel, the

record, and the applicable law, the Court now rules as follows.

## I.    BACKGROUND

This litigation arises from alleged asbestos exposure sustained by Decedent James Grant

Gooding ("Decedent") while he was employed at various shipyards between 1970 and 1979. R.

Doc. 580; R. Doc. 1-1. Decedent allegedly contracted malignant pleural mesothelioma and,

ultimately, died as a result of his occupational exposure to asbestos.

Plaintiffs in this survival action are Decedent's surviving heirs, Martha Gooding, Helen

Leupold, and Caroline Pendergast (collectively, "Plaintiffs"). They assert wrongful death claims

against a number of defendants who allegedly are responsible for exposing Decedent to, or

failing to protect Decedent from exposure to, asbestos, and therefore are liable for his contracting

and dying of malignant pleural mesothelioma. R. Doc. 580.

1

From June 1967 until January 1970, Mr. Gooding served as an officer in the Coast Guard. R. Doc. Gooding Dep. at Vol. I, pp. 105-09. During his military service, Mr. Gooding worked as a Marine Inspector assisting with vessel construction, maintenance, and repairs. *Id.* In particular, Decedent inspected vessels' boilers. Gooding Depo. at Vol. III, p.17. Decedent primarily worked at Avondale Shipyards but also spent time at other shipyards in Southeast Louisiana. *Id.* at Vol. I, pp. 112-14.

Following his honorable discharge from the Coast Guard, Decedent worked from 1970 until his retirement in around 2005 as a field surveyor for American Bureau of Shipping ("ABS"). In this role, Decedent performed vessel inspections, checking ships' machinery, boilers, and piping systems in order to determine whether they met ABS classification requirements. Decedent was assigned to scores of shipyards while employed at ABS. R. Doc. 1-1 at 10-11.

In January 2020, Decedent was diagnosed with mesothelioma. R. Doc. 580 at 2. Later, he was deposed and testified that, while working for the Coast Guard and ABS, he was frequently exposed to asbestos, resulting in his mesothelioma. R. Doc. 1-2; R. Doc. 1-3; R. Doc. 1-4; R. Doc. 1-5.

Subsequently, on March 4, 2020, Decedent filed this matter in the Civil District Court for the Parish of Orleans, naming the following four broad categories of defendants: (1) Premises Defendants, which he alleged were strictly liable and/or negligent;[1] R. Doc. 1-1; 1-10; (2) "Asbestos Suppliers" and (3) "Asbestos Manufacturers," which both allegedly breached

---

[1] Namely: (1) Boland Marine & Industrial, LLC; (2) Marine and Manufacturing Company, LLC; (3) Defendant-Cross Defendant Sank Inc.; (4) Bollinger Shipyards Lockport, LLC; (5) Main Iron Works, LLC; (6) Swiftships Inc., to which Teledyne Inc. and Cross Defendant UNC Capital Corporation are predecessors in interests; (6) Delta Machine & Ironworks LLC; (7) Defendant-Cross Defendant American Marine Corporation; (8) Huntington Ingalls Incorporated, and its former executive officer, Albert Bossier; (9) Tidewater Inc.; (10) Trinity Industries Inc.; and (11) American Marine Corporation; (12) International Paper Company).

warranties and are therefore negligent and/or strictly liable; R. Doc. 1-10 at 11-14;[2] and (4)

"Insurance Defendant[s]," who allegedly are liable under the Louisiana Direct Action Statute for

their insureds' acts and omissions. *Id.* at 18.[3]

As relevant to the pending motion, Defendants Avondale and Albert L. Bossier, Jr., an

alleged executive officer of Avondale, filed crossclaims against other parties, including Buck

Kreihs. R. Doc. 3 (Avondale's crossclaims); R. Doc. 29-2 at 30-43 (Bossier, Jr.'s crossclaims).

Avondale and Bossier, Jr. reallege Plaintiffs' allegations against Buck Kreihs and argue that, if

they are found liable, then they are each entitled to a virile share contribution from Buck Kreihs.

*Id.* at 17-18.

On March 22, 2020, Decedent passed away. Plaintiffs, as Decedent's successors, were

substituted in his place. They filed this survival action and asserted wrongful death claims. R.

Doc. 580 at 2. Certain Defendants removed the matter to this Court on April 7, 2020 pursuant to

the federal officer removal statute, 28 U.S.C. § 1442(a)(1).[4]

---

[2] Namely: (1) Hopeman Brothers Inc.; (2) Eagle Inc.; (3) McCarty Corporation; (4) General Electric
Company; (5) Foster Wheeler LLC; (6) Viacom CBS Inc.; (7) Bayer CropScience; and (8) Taylor-Seidenbach, Inc.;
(8) General Electric Company; (9) Foster Wheeler LLC; and (10) Bayer CropScience.

[3] Namely: (1) Liberty Mutual Insurance Company, as the alleged insurer of Hopeman Brothers Inc.; (2)
Zurich American Insurance Company, as the alleged insurer of Terminated-Defendant Marquette Insulations, Inc.;
(3) Travelers Indemnity Company, as the alleged insurer of Swiftships, Inc.; (4) Certain Underwriters at Lloyds,
London; (5) Berkshire Hathaway Specialty Insurance Company, as an alleged insurer of Eagle, Inc.; (6) United
States Fidelity and Guaranty Company, as another alleged insurer of Eagle, Inc.; (7) Maryland Casualty & Surety
Company, as the alleged insurer of Marquette Insulations, Inc.; (8) Aetna Casualty & Surety Company, as an alleged
insurer of Trinity Industries, Inc.; (9) Employers Insurance Company of Wausau, as another alleged insurer of
Trinity Industries, Inc.; (10) Fidelity and Casualty Insurance Company of New York, as another alleged insurer of
Trinity Industries, Inc; and (11) Hartford Accident and Indemnity Company, as another alleged insurer of Trinity
Industries, Inc.

[4] The matter was originally allotted to Chief Judge Brown, who later recused herself on February 15, 2022.
R. Doc. 611.

## II.    PRESENT MOTION

Buck Kreihs, a vessel repair company that operated a shipyard in New Orleans during the 1960s-1970s, moves for summary judgment and dismissal of all claims asserted against it by Plaintiffs and crossclaims by Avondale and Albert L. Bossier, Jr. R. Doc. 651. Mr. Gooding worked as a boiler inspector at Buck Kreihs's shipyard during his service in the Coast Guard and while employed by ABS. Gooding Depo. at Vol. I, p. 140. Buck Kreihs argues that neither Plaintiffs nor Avondale have presented evidence that any conduct attributable to it substantially contributed to or caused Decedent's mesothelioma and death. R. Doc. 651 at 1; R. Doc. 1-1 at 11.

Both Plaintiffs and Avondale oppose the motion. R. Doc. 654 (Plaintiffs); R. Doc. 673 (Avondale).[5] They argue that competent summary judgment evidence shows that Mr. Gooding's work inspecting vessels at Buck Kreihs exposed him to significant amounts of asbestos and that his exposure was a substantial factor in causing his mesothelioma and death. Thus, Plaintiffs and Avondale assert that summary judgment is inappropriate and that the trier of fact must resolve the question of Buck Kreihs's liability.

## III.    DISCUSSION

### A.  Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

---

[5] Although Buck Kreihs refers to Avondale and Albert L. Bossier, Jr. collectively, Bossier, Jr. is in fact a separate party and has not filed any opposition to the pending motion. On January 7, 2022, prior to the filing of the present motion, a suggestion of death as to Bossier, Jr. was filed. R. Doc. 608. At this point, no successors or heirs of Mr. Bossier, Jr. have been substituted in his stead.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

### B.  Analysis

As noted, Plaintiffs and Avondale have asserted claims and crossclaims, respectively, against Buck Kreihs. These claims and crossclaims contend that Bucks Kreihs is liable for Mr. Gooding contracting and dying of mesothelioma. Unsurprisingly, Buck Kreihs's arguments in

favor of summary judgment as to both Plaintiffs' claims and Avondale's crossclaims rest on the

same contention: that Mr. Gooding was not exposed to asbestos-containing materials while

performing vessel inspections at its shipyard and, moreover, there is no evidence that any

supposed exposure to asbestos is causally linked with Decedent's mesothelioma and death

therefrom. R. Doc. 651-1; R. Doc. 651-3 at 1. Because Buck Kreihs posits the same arguments

for summary judgment as to the claims by both Plaintiff and the crossclaims by Avondale, the

same analysis applies to each request for summary judgment. Accordingly, the Court will

provide a single, comprehensive discussion of Buck Kreihs's arguments for summary judgment

as to Avondale's and Plaintiffs' respective claims and the parties' oppositions thereto.

Under Louisiana law, to prevail in an asbestos case, a plaintiff "must prove . . . that: (1)

his exposure to the defendant's asbestos product was significant; and (2) that this exposure

caused or was a substantial factor in bringing about his mesothelioma." *Romano v. Metro Life

Ins. Co.*, 2016-0954 (La. App. 4 Cir. 5/24/17), 221 So. 3d 176, 182; *accord Abadie v. Metro. Life

Ins. Co.*, 00-344 (La. App. 5 Cir. 3/28/01), 784 So. 2d 46, 89–90. Regarding the first prong of

this test, "exposure" in asbestos cases "refers to 'inhalation of asbestos fibers into the

lungs.'" *Laurent v. New Orleans City*, No. CIV.A. 14-2022, 2015 WL 5254723, at *2 (E.D. La.

Sept. 9, 2015) (quoting *Abadie,* 784 So.2d at 93). Plaintiffs can demonstrate Decedent's

"significant" exposure by showing that he actively worked with asbestos-containing

materials. *Id.* To survive summary judgment, "the plaintiff must submit specific evidence

showing potential exposure to the defendant's asbestos-containing products." *Id.* (citing

*Thibodeaux v. Asbestos Corp., Ltd.,* 20071445, p. 14 (La. App. 4 Cir. 2/20/2008); 976 So.2d 859,

867). Turning to the latter prong of the pertinent test, "[w]hether the defendant's conduct was a

substantial factor is a question for the jury, unless the court determines that reasonable men could not differ." *Borel v. Fibreboard Paper Prod. Corp.*, 493 F.2d 1076, 1094 (5th Cir. 1973).

**1. Whether Decedent Suffered Significant Exposure to Asbestos at Buck Kreihs**

Considering the first prong of the governing test, the Court finds that there is sufficient summary judgment evidence to create a fact issue as to whether Mr. Gooding sustained significant exposure to asbestos while working at Buck Kreihs. To begin, Mr. Gooding testified that he worked in the boiler room of older ships while at Buck Kreihs's shipyard and that dust was visible. Gooding Depo. at Vol. I, pp. 141-422. Corroborating Mr. Gooding's description of his work environment is testimony from former Buck Kreihs workers; these individuals testified that asbestos was present on the vessels that the company serviced and repaired, including in ships' boiler rooms.[6] Finally, Plaintiffs' industrial hygiene expert testified that Decedent's precise job duties would have exposed him to asbestos-containing materials. Garza Depo. at pp. 56-57. The Court will briefly summarize this evidence.

During his deposition, Mr. Gooding testified that, while serving in the Coast Guard, he "occasionally" performed work at Buck Kreihs's shipyard. Gooding Depo. at Vol. I, p. 140. There, Gooding worked as a boiler inspector on vessels, checking their safety valves. *Id.* In total, Mr. Gooding estimated he performed this work at Buck Kreihs "ten or fifteen times" while with the Coast Guard. *Id.* at 141.

After leaving the Coast Guard and joining ABS, Mr. Gooding continued to perform boiler surveys at Buck Kreihs. *Id.* at Vol. I, p. 29. "[D]uring the Vietnam era," the shipyard was refurbishing older vessels, particularly ships leftover from World War II. *Id.* As part of this

---

[6] Depo. of Clifford Tonguis, *Maher v. American Cynamid, et al*, Civ. No. 93-467, 34th Judicial District Court, Parish of St. Bernard (June 19, 2002); Depo. of Jose Trigueros, *Trigueros v. Boland Marine & Manufacturing Company, LLC., et al*, No. 16-559, Civil District Court for the Parish of Orleans (Feb. 25, 2016).

work, Buck Kreihs would "overhaul[]" the boiler systems. *Id.* at 29-30. Thereafter, Decedent would inspect the boilers. Specifically, Decedent testified that "after the boilers had been opened up," he would "examine[] all the fire boxes, the brickwork, [and] the piping systems." *Id.* at 36. He would "go through and look at a lot of the boiler tubes, boiler drums, and inside of the boilers as well as . . . outside." *Id.* at 29-30, 36. Mr. Gooding also assessed the boilers' performance during hydrostatic testing. "[T]he last step in the game would be setting of the safety valves" on the vent system. *Id.* at 29-30, 37, 141-43.

Decedent described the boiler overhaul process as dusty, testifying that dust would get on his clothes. *Id.* at 30. And the work of setting safety valves resulted in "a lot of steam blowby," which "could kick up dusty everywhere." *Id.* at 37. Mr. Gooding also noted that, during tests of the safety valve system, it was "not unusual" for the system to break. *Id.* at 142. When this happened, "it would be a big – a big cloud of dust." *Id.* at 143. While employed at ABS, Decedent testified that he conducted between 5-15 surveys at Buck Kreihs and two other shipyards. *Id.* at Vol. 2, pp. 144-45.

Mr. Gooding also expressly stated his personal belief that he was exposed to asbestos while working on vessels at Buck Kreihs due to the actions of the company's employees. *Id.* at Vol. I, p. 38; Vol. 4, p. 14.[7] Moreover, Plaintiffs' industrial hygiene expert, Kenneth Garza, CIH, testified that Decedent's work at Buck Kreihs—namely, his inspections of fire boxes, brickwork,

---

[7] At his deposition, Mr. Gooding had the following colloquy with counsel:

Q. Is it your belief that at one time or another that you worked in areas where Buck Kreihs employees were doing work you believe exposed you to dust from asbestos materials? . . .

THE WITNESS: I would say yes. But all of these companies are beginning to -- kind of getting mixed up like a bunch of chickens.

Construing this testimony in the light most favorable to Plaintiffs and Avondale, as the non-movants, Mr. Gooding indicated that work performed by Buck Kreihs employees exposed him to asbestos.

and piping systems—would have exposed him to "asbestos-containing pipes." Garza Depo. at

pp. 56-57 (noting that Decedent "would have been a bystander to the disturbance of . . . thermal

systems insulation," a material that contains asbestos).

Testimony from executives and contractors with Buck Kreihs substantiates that the

company's vessel repair work involved interacting with asbestos-containing products. For

example, Clifford Tonguis, a vice-president and safety director of Buck Kreihs, testified that,

during the 1970s, the vessels the company serviced contained materials composed of asbestos; in

particular, asbestos was present in the vessels' pipe and hot pressure insulation, including the

insulation on boilers. Tonguis Depo. at 19, 26-27. Furthermore, the following exchange occurred

during the deposition of Michael Tonguis, Buck Kreihs's corporate representative:

> Q. You're not aware of any Buck Kreihs employees in the 1970s or 1980s using
> any sort of enclosure techniques to prevent asbestos dust from being admitted
> where asbestos was potentially being removed from pipes or equipment utilizing
> asbestos?
>
> A. No....
>
> Q. You're not aware, sir, that Buck Kreihs used any sort of dust collection
> techniques in the 1970s or 1980s with regards to any potential removal of
> asbestos from pipes or equipment utilizing asbestos, are you?
>
> A. No.

Depo. of Michael Tonguis, *Kenney v. A.W. Chesterston Co., et al*, No. 2011-00636, Civil District

Court for the Parish of Orleans, No. 2011-00636 (July 11, 2011), pp. 35-36. Notably, Buck

Kreihs did not deny that dust containing asbestos was present at its shipyard. And as Bucks

Kreihs acknowledged, it did not undertake any efforts to remove asbestos-containing dust from

its pipes. Last, Decedent's multiple references to exposure to dust during his inspections of

boilers at the shipyard find support in the testimony of Jose Trigueros, a boilermaker welder who

worked at Buck Kreihs's shipyard from 1972-1979. Like Mr. Gooding, Trigueros described seeing "[p]lenty" of dust in ships' boiler rooms. Trigueros Depo. Vol. 1, p. 15; Vol. 3, p. 293.

Based on the foregoing, the Court disagrees with Buck Kreihs's contention that there is no evidence that work at its shipyard involved asbestos-containing materials. R. Doc. 651-1 at 3-4. Taken together and viewed in the light most favorable to Decedent, the testimony shows the following. First, Decedent's work environment at Buck Kreihs was "dusty." Second, the boiler surveys that Mr. Gooding conducted at Buck Kreihs in the 1970s entailed inspections of pipes—and these pipes, according to Buck Kreihs's safety director, may well have been insulated by material that contained asbestos. Third, Mr. Gooding set safety valves at the end of his surveys, a process that not infrequently resulted in visible clouds of dust. And although potentially asbestos-containing insulation material apparently was removed at some point during the boiler overhaul process, it was "back on the piping" when Decedent set the safety valves. Gooding Depo. at Vol. I, p. 36. Finally, in a corporate deposition, Buck Kreihs did not gainsay the presence of asbestos-containing dust in its pipes and other equipment and conceded that it made no efforts to collect or remove asbestos dust. These facts permit the reasonable inference that Decedent was exposed to asbestos during the multiple boiler surveys he carried out at Buck Kreihs while employed by ABS.

Buck Kreihs argues that, even assuming asbestos-containing materials were present at its worksite, the evidence indicates that Decedent was not present while the company was performing its work. The company cites testimony from Decedent that he "tried to avoid" conducting his surveys until the work on the boilers was complete, so that he would not "get[] in the way." Gooding Depo. at vol. II, p. 140. Thus, Buck Kreihs asserts that there is no linkage

between its activities and any asbestos exposure that Decedent may have experienced at its shipyard. R. Doc. 651-1 at 4-5.

Buck Kreihs's argument is not persuasive. For starters, Decedent did not definitively state that he only worked on boilers outside of the presence of Buck Kreihs's employees. And at the summary judgment phase, the Court must make all reasonable inferences in the non-movant's favor. Furthermore, Decedent provided other testimony that creates a fact issue as to whether work performed by Buck Kreihs exposed him to asbestos. Decedent discussed that, during the course of his inspections at Buck Kreihs's shipyard, it was "not unusual" for boilers' safety valve systems to break. *Id.* at 142. Since Buck Kreihs was responsible for the boiler overhauls, it is inferable that these safety valve system failures were attributable, at least in part, to work performed by Buck Kreihs employees. *Id.* at 140-44. Significantly, these failures resulted in "blowout[s]" that caused dust—which may have contained asbestos—to spread "everywhere." *Id.* at 37.

More importantly, even if work performed by Buck Kreihs employees did expose Decedent to asbestos, this does not necessarily absolve the company of liability. Buck Kreihs owned and operated the shipyard that Decedent worked at. Given Buck Kreihs's control over Decedent's work environment, the company may be directly liable if, due to its negligence, Decedent was exposed to asbestos while he executed his job functions at the shipyard—a finding that is reasonably suggested by the summary judgment evidence when it is considered under the proper standard. *See Thomas v. A.P. Green Indus., Inc.*, 2005-1064 (La. App. 4 Cir. 5/31/06), 933 So. 2d 843, 852-57.

Accordingly, the Court finds that Plaintiffs have submitted "specific evidence" of Decedent's potential exposure to asbestos-containing products. *Laurent*, No. CIV.A. 14-2022,

2015 WL 5254723, at *2. Thus, Plaintiffs and Avondale have come forward with sufficient

evidence to show that Decedent sustained significant exposure to asbestos during his work at

Buck Kreihs while employed by ABS. *Id.*

2.  **Whether Decedent's Exposure to Asbestos at Buck Kreihs was a Substantial Factor in Causing his Mesothelioma**

Because Plaintiffs and Avondale have cleared step one in the two-step test for

demonstrating liability for asbestos exposure, the Court turns to the second step: whether a

reasonable juror could conclude that Decedent's significant exposure was a substantial factor in

causing his mesothelioma. *See Romano*, 221 So. 3d at 182. Where, as here, an individual has

significant exposure to asbestos and subsequently contracts mesothelioma, it is generally for the

jury to determine whether the exposure played a role in the disease's etiology. *Cf. Borel*, 493

F.2d at 1094; *Robertson v. Doug Ashy Bldg. Materials, Inc.*, 2014-0141 (La. App. 1 Cir.

12/23/14), 168 So. 3d 556, 564 ("The causal link between asbestos exposure and mesothelioma

contraction has been demonstrated to such a high degree of probability, while at the same time,

few if any other possible causes have been identified, that if one is diagnosed as having

mesothelioma and that person was exposed to asbestos, that exposure is recognized to be the

cause of the mesothelioma."). As the Louisiana Supreme Court has noted, "[m]esothelioma can

develop after fairly short exposures to asbestos." *Rando v. Anco Insulations Inc.*, 2008-1163 (La.

5/22/09), 16 So. 3d 1065, 1091. Accordingly, even brief exposures to asbestos may be a

substantial factor in causing the disease. *Id.*

In this case, a jury could reasonably infer from Decedent's testimony that he was exposed

to asbestos-containing dust on multiple occasions while working at Buck Kreihs. Indeed,

Plaintiffs' industrial hygiene expert, Garza, concluded that it was more likely than not that

Decedent was exposed to above-background levels of asbestos. Garza Depo. at p. 57.[8] And

crucially, "[t]here is a universally recognized causal connection between asbestos exposure

above background levels and the occurrence of mesothelioma." *Robertson*, 168 So. 3d at 564.

Additionally, Avondale's medical expert, Dr. Brent Staggs, opined in his expert report

that Decedent's cumulative exposures to asbestos—including from sources such as insulation

materials and boilers—at the many shipyards he worked at "were *each* a significant contributing

factor to his development of his malignant mesothelioma." Report of Dr. Staggs at p. 16

(emphasis added).

The Court concludes that Plaintiffs and Avondale have adduced sufficient evidence to

raise a fact issue as to whether Decedent's exposure to asbestos at Buck Kreihs was a substantial

factor in causing his mesothelioma and death. Consequently, the Court must deny Buck Kreihs's

motion for summary judgment.

## IV.    CONCLUSION

For these reasons,

**IT IS ORDERED** that Buck Kreihs's motion for summary judgment, R. Doc. 651, is

**DENIED**. As discussed, Bossier, Jr. is deceased and neither his estate nor his successors or heirs,

if any, have appeared in this litigation and pursued his claim. No opposition was filed on Bossier,

Jr.'s behalf. Nevertheless, for the reasons articulated herein, the Court finds that Buck Kreihs's

arguments in support of its motion for summary judgment are not meritorious. Accordingly, the

motion is also denied insofar as it requests dismissal with prejudice of Bossier, Jr.'s claims.

---

[8] Garza's conclusion was premised on the assumption that Decedent worked at Buck Kreihs prior to 1975, at which point a ban "TSI"—a shorthand for thermal system insulation, a substance that "contains more than 1% asbestos" OCCUPATIONAL SAFETY AND HEALTH ADMINISTRATION, https://www.osha.gov/laws-regs/regulations/standardnumber/1926/1926.1101 (last visited Aug. 16, 2022))—was instituted. Decedent's testimony reasonably suggests he worked at the shipyard prior to this period. Gooding Depo. at Vol. I, p. 29 (noting that Gooding began his employment with ABS in 1970 and that, while employed by ABS, he worked at Buck Kreihs during the Vietnam War-era).

New Orleans, Louisiana, this 17th day of August, 2022.

**UNTIED STATES DISTRICT JUDGE**